811 F.2d 1504
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The AMERICAN NEWSPAPER PUBLISHERS ASSOCIATION, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
McGraw-Hill, Inc., Intervenor,
The Association of Business Publishers, Intervenor,
Third Class Mail Association, Intervenor,
Advo-System, Inc., Intervenor.
 No. 86-3850.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 10, 1986.
Decided Jan. 30, 1987.
 
 Before RUSSELL and HALL, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 David C. Kohler (Alexander Wellford, Christian, Barton, Epps, Brent & Chappell, W. Terry Maguire, Tonda F. Rush, American Newspaper Publishers Association on brief) for petitioner.
 Frances G. Beck, Associate General Counsel (Robert C. Lowry, William T. Alvis, Louis A. Cox, General Counsel on brief) for respondent.
 PER CURIAM:
 
 
 1
 The American Newspaper Publishers Association (ANPA) petitions for review of an order by the Board of Governors of the United States Postal Service (Board), approving a recommended decision of the Postal Rate Commission (Commission), to add Section 200.0123 to the Domestic Mail Classification Schedule on the ground that the new regulation dealing with second-class mail discriminates against a class of publications known generally as Plus Issues in violation of the first and fifth amendments to the United States Constitution. Finding that a subsequent postal regulation cures whatever constitutional defects, if any, may have existed in the challenged regulation, we affirm.
 
 
 2
 The challenged regulation,[1] now codified at 39 C.F.R.App. A Sec. 3001.68, was recommended by the Postal Rate Commission in response to a complaint regarding the use of second-class mail permits for "Plus Issues." Plus Issues are issues of a newspaper (or other periodical publication) that are published on a regular schedule and are distributed both to newspaper subscribers and to a large number of nonsubscribers within certain geographic areas. Such issues typically contain a high percentage of advertising and a limited range of editorial content. Under existing postal regulations a second-class permit holder could mail a Plus Issue at low second-class rates while competitors had to use higher third-class rates to mail similar materials to the same audience. The complaint out of which the challenged regulation developed was that "the current practice of the Postal Service of accepting certain 'total market coverage' products [Plus Issues] for mailing to nonsubscribers at second-class regular and subsidized within-county rates, under the second-class permit of the regular daily newspaper, is improper." The final decision of the Board on this complaint, arrived at after a full hearing, was "that, for purposes of determining second-class eligibility and postage, an 'issue' of a newspaper or other periodical shall be deemed to be a separate publication if it is published at a regular frequency on the same day as another regular issue of the same publication, and it is distributed to more than (i) 10 percent nonsubscribers, or (ii) twice as many nonsubscribers as the other issue on that same day, whichever is greater." The ANPA has attacked this new regulation on the ground that it requires that the Plus Issues of daily newspapers "must meet the applicable second-class eligibility criteria," but "publications appearing less frequently (e.g. magazines and weekly newspapers) may publish additional issues and obtain second-class postage rates for their distribution without comparable restrictions."
 
 
 3
 The ANPA does not challenge the Board's authority to make rules of general application for second-class mail, and it readily concedes that the Board can regulate the allowable percentage of advertising and the percentage of distribution to nonsubscribers for second-class mail. As we have already indicated, the ANPA argues, however, that the Board improperly and unconstitutionally discriminated between daily and nondaily publications because Section 200.0123 is triggered only when two Plus Issues are regularly published on the same day. Because nondaily publications can produce Plus Issues on open days of the week and thus escape the same-day trigger, the ANPA contends that the economic burden of this regulation will fall solely on publications whose schedules contain no open days. This, alleges the ANPA, infringes on daily publications' first amendment right of free speech and its fifth amendment right to equal protection. See, e.g., Minneapolis Star and Tribune Co. v. Commissioner of Revenue, 460 U.S. 575 (1983).
 
 
 4
 We find it unnecessary to reach petitioner's constitutional question. After the briefs were filed in this case, the United States Postal Service promulgated a final rule whose effect is to eliminate the same-day trigger.[2] The ANPA suggests that this most recent rule still discriminates between classes of publications on the basis of frequency because it substitutes a same-week trigger for a same-day trigger. We think this is too narrow a reading. The use of the word "week" in part (a) of the new rule clearly is illustrative rather than definitive. We do not read into this rule an exemption for any nonweekly publication that would permit it to mail Plus Issues at second-class rates by piggybacking onto the parent publication. Our reading of the rule is well supported by its plain language, and also conforms to our duty to construe regulations so as to avoid the constitutional question.
 
 
 5
 The ANPA suggests that the new rule is inadequate to cure the alleged defects in Section 200.0123 because the new rule emmanates from a different agency and because it amends the Domestic Mail Manual rather than the Domestic Mail Classification Schedule. Although we think it unfortunate that the two regulations affecting Plus Issues are in different places--one an appendix to 39 C.F.R. and the other merely incorporated into 39 C.F.R. by reference--we are nonetheless convinced that taken together these regulations contain no defects as charged under the first and fifth amendments to the United States Constituion.
 
 
 6
 Accordingly, the order by the Board of Governors of the United States Postal Service is
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 The challenged regulation reads as follows: 200.0123 Second-Class Mail
 For purposes of determining second-class eligibility and postage under Classification Schedule 200, an "issue" of a newspaper or other periodical shall be deemed to be a separate publication if:
 a. it is published at a regular frequency on the same day as another regular issue of the same publication; and
 b. it is distributed to more than (i) 10 percent nonsubscribers, or (ii) twice as many nonsubscribers as the other issue on that same day, whichever is greater.
 Such separate publications must independently meet the qualifications in Section 200.0101 through 200.0109, or 200.0110.
 
 
 [2]
 The rule published at 51 Fed.Reg. 33,610 (1986) amends the Domestic Mail Manual (which is incorporated by reference into 39 C.F.R. Part III) to add Section 425.226 as follows:
 .226 An "issue" of a newspaper or other periodical shall also be deemed to be a separate publication, for postal purposes, and must independently meet the applicable second-class eligibility qualifications in 421.2 through 421.4 and 422, when the following conditions are met:
 a. the "issue" is published at a regular frequency, such as once each week, but not on the same day as another regular "issue" of the same publication, and
 b. more than 10 percent of the total number of copies of the "issue" are distributed on a regular basis, more frequently than once each month, to recipients that do not subscribe to it, and
 c. the number of copies of the "issue" distributed to nonscribers is more than twice the number of any other regular issue distributed during the same week.